The results of Dr. Timmons' evaluation were received by the Commission on April 29, 1994 in the form of medical notes by Dr. Timmons dated April 20th and April 24th of 1994. IT IS ORDERED that these medical documents are admitted into evidence. N.C.G.S. § 97-85.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with MODIFICATION of Findings of Fact numbered 10-12 and Conclusion of Law number 3 and the addition of Award paragraphs 2-4, as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
In addition to the stipulations contained in the Pre-Trial Agreement, the parties furthermore stipulated to the following:
1. Plaintiff received compensation for temporary total disability for approximately 211 weeks, from May 24, 1988 to May 15, 1992. The total amount of compensation received by plaintiff totals $42,720.46.
2. Medical records from the Duke University Pain Clinic regarding treatment of plaintiff.
* * * * * * * * * * *
FINDINGS OF FACT
1. Plaintiff is a 38 year old male. Prior to working for employer, plaintiff earned his high school degree and worked as an electrician/industrial contractor for eight years and as an insurance agent for three years. Plaintiff's work as an electrician/industrial contractor involved the supervision of nine men in the running of conductors, pulling wire and hooking up equipment and motors. As an insurance agent, plaintiff sold insurance and collected premiums, which did not require plaintiff to engage in a lot of physical activity.
2. On May 16, 1988, plaintiff sustained a compensable back injury while performing fireman training exercises for employer. On said date, plaintiff was earning an average weekly wage of $297.18, rendering a compensation rate of $198.13 per week, as shown on the parties' Form 21 agreement approved by the Commission June 28, 1988.
3. Plaintiff began receiving treatment for his back pain on May 18, 1988 from Dr. Mark Wertman. At that time, plaintiff complained of back pain and pain radiating down his right hip.
4. On September 8, 1988, Dr. Wertman performed an L4-5 laminectomy. Dr. Wertman subsequently referred plaintiff to the Duke University Medical Center Pain Clinic for pain control on March 20, 1989.
5. On July 18, 1989, Dr. Wertman referred plaintiff for a functional capacity evaluation at the Carolina Rehabilitation and Evaluation Center so that plaintiff could be retrained and return to gainful employment. The tests results indicated that plaintiff possessed the physical capacity to engage in light to medium work with a lifting restriction of 45 pounds.
6. In August of 1991, plaintiff began working as a general contractor on a house belonging to his father that he was remodeling for his own use, and continued to work on the home until May of 1992, when he became aware of defendant's knowledge of the extent of his activities. According to the testimony of plaintiff and the other witnesses, plaintiff performed various duties over a period of nine months, that included supervising the remodeling work on the house, as well as actively participating in the manual labor associated with the remodeling. Specifically, plaintiff supervised the removal of materials from the property and the removal of sheet rock from the walls prior to construction, supervised the digging of a foundation for an addition to the house, made arrangements for the delivery of building materials and labor, and performed the final roof inspection. Plaintiff, in addition, physically assisted in the digging of the foundation, crawled underneath the house, climbed on scaffolding and nailed gable ends to the roof, de-extended and carried a ladder, assisted the electrician, cleaned the work site, and carried lumber and cinderblocks. Based upon the testimony of plaintiff and the other witnesses regarding his activities as a general contractor, as well by the videotape submitted into evidence at the hearing, the plaintiff has demonstrated that he possesses the physical capacity to engage in light to medium duty work with a lifting restriction of 45 pounds.
7. Dr. Wertman has continued to treat plaintiff for complaints of back pain since his injury. The deputy commissioner found that plaintiff's continued complaints to Dr. Wertman that he experienced severe pain with any prolonged sitting or standing were contrary to plaintiff's observed activities as a general contractor. Therefore, the deputy commissioner found that Dr. Wertman's opinion that plaintiff does not possess the capacity for work was not credible. Based upon the testimony of plaintiff and the other witnesses regarding his activities as a general contractor, as well as by the videotape submitted into evidence at the hearing, and the hearing deputy's evaluation, the plaintiff has demonstrated that he possesses the physical capacity to engage in light to medium duty work with a lifting restriction of 45 pounds.
8. Other than the work he has performed as a general contractor, plaintiff has not returned to work with defendant-employer or anyone else since May 16, 1988. Furthermore, plaintiff has not attempted to look for other work since reaching maximum medical improvement despite Dr. Wertman's opinion that he return to light to medium duty work with a 45 pound lifting restriction, despite his own testimony at the hearing that he would be willing to try light duty work, and despite his activities at the remodeling project. Plaintiff also currently performs household duties such as cooking, laundry and washing dishes. Consequently, the deputy commissioner found that although plaintiff is unable to return to his prior work with defendant-employer, plaintiff has not made a reasonable effort to obtain employment and has not demonstrated a disability which would prevent him from seeking alternative employment.
9. In May of 1989, Dr. Wertman prescribed whirlpool baths to plaintiff for pain relief, and the use of an aerodyne bicycle for weight loss. Consequently, defendant purchased a YMCA membership for plaintiff's use. Based upon the testimony of Dr. Wertman, the deputy commissioner found that it is more reasonable for plaintiff to use the stationary bicycle and the whirlpool bath at the YMCA rather than to purchase such equipment for his own personal use, and, therefore, that the purchase of such equipment is not medically necessary.
10. On June 2, 1992 the Industrial Commission approved a Form 24 Application to Stop Payment of Compensation. The Form 24, dated May 15, 1992, gave as grounds that, "Plaintiff has the ability to work and is working construction and/or remodeling a house." As of May 15, 1992 plaintiff was capable of gainful employment. Plaintiff has failed to prove that he has been totally disabled since May 15, 1992.
11. On April 20, 1994, as a result of a Full Commission order for an independent medical evaluation, Dr. Robert L. Timmons physically examined plaintiff, took his history, and reviewed his treating physician's notes and associated records. Following the physical exam, Dr. Timmons reviewed other medical evidence, including x-ray and MRI reports and physician notes. In his report to the Full Commission dated April 26, 1994, Dr. Timmons stated that, on the basis of two level disc disease requiring two level laminectomy and diskectomy with some persisting musculoskeletal and radicular discomfort, he would give plaintiff a permanent partial impairment rating of 30% of the back.
12. Plaintiff has suffered a 30% permanent partial disability to his back resulting from the May 16, 1988 accident.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff is not entitled to further temporary total disability compensation benefits as a result of the injury by accident giving rise hereto. N.C.G.S. § 97-29. See also, Russell v.Lowe's Product Distribution, 108 N.C. App. 762, 426 S.E.2d 454 (1993).
2. The purchase of a whirlpool bath and aerodyne bicycle are not necessary medical treatment as defined by N.C.G.S. §97-25. Accordingly, plaintiff is not entitled to the purchase of a whirlpool bath and aerodyne bicycle for his personal use. N.C.G.S. § 97-25.
3. Plaintiff is entitled to compensation for a 30% permanent partial disability of his back resulting from the May 16, 1988 accident at the rate of $198.13 per week. N.C.G.S. § 97-31(23).
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for additional benefits under the provisions of N.C.G.S. § 97-25 and 97-29 is DENIED, without prejudice to his right to prove the necessity of and right to medical compensation in the future, per Hyler v. GTE Products Co., 333 N.C. 258,425 S.E.2d 698 (1993).
2. Defendant shall pay to plaintiff 90 weeks of permanent partial disability compensation at the rate of $198.13 per week, in one lump sum, subject to the attorney fee hereinafter approved. N.C.G.S. § 97-31(23).
3. A reasonable attorney fee of 25% of the compensation hereinabove awarded is approved and shall be deducted and paid directly to plaintiff's counsel for valuable services rendered. N.C.G.S. § 97-90.
4. Defendant shall pay the costs of the independent medical evaluation in the amount of $430 to Dr. Robert L. Timmons.
5. Each side shall bear its own costs.
 S/ _____________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _____________ COY M. VANCE COMMISSIONER
S/ _____________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/20/95